

Albert Thomas Wendfeldt
Reg No. 46183-048
Sheridan Prison Camp - Unit 5
P.O. Box 6000
Sheridan, Oregon 97378

Petitioner, Pro Se

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| ALBERT THOMAS WENDFELDT, Petitioner-Defendant, vs. UNITED STATES OF AMERICA. Respondant-Plaintiff. | Case No: _____<br>Criminal No: 11-CR-0094-LRH-VPC<br>DECLARATION OF<br>PETITIONER-DEFENDANT<br>IN SUPPORT OF HIS<br>MOTION TO VACATE, SET<br>ASIDE OR CORRECT<br>[28 USC § 2255] |
|---|---|

Declaration of Albert Thomas Wendfeldt

I, Albert Thomas Wendfelt, do hereby depose and say:

1) I am the Defendant in U.S. v. Albert Thomas Wendfeldt, Case No: 3:11-CR-0094-LRH-VPC in the U.S. District Court for the District of Nevada. I make this declaration based on my personal knowledge.

2) I am currently incarcerated in the Federal Prison Camp located in Sheridan, Oregon. My address is: Sheridan Prison Camp, Unit 5, P.O. Box 6000, Sheridan, Oregon 97378.

3) On the evening of 11 July 2011, a Nevada Highway Patrol K-9 unit pulled me over. He asked me for my driver's license, registration and proof of insurance. Then the patrolman asked me to step out of the car and stand in front of the patrol car.

Declaration of A. T. Wenfeldt - 1

4) I asked the patrolman why he had stopped me. He answered that I had crossed the fog line several times. Then I explained to him that if I had been doing that, it was because the lights were too bright, which was also why I had slowed to allow him to pass.

5) The patrolman then proceeded to run my information. He then asked me if I had been drinking. I answered that I had not. I explained that I had been driving all day and so was tired. I had planned on getting a motel room in Reno. The patrolman asked me a few more questions. Then he got clearance on my information and said I was free to go.

6) I had begun to walk back to my car when the patrolman abruptly called me back. He then said: "We have a lot of drug smugglers around here." And then he asked me if he could search my vehicle. At this point I refused and he proceeded to take his dog out of his truck and have the dog begin to sniff around my vehicle. Eventually the dog gave a signal by scratching the ground by my tire.

7) The patrolman now called for back-up and told me to go and sit away from my car while he tried to get a search warrant. This process took approximately twenty minutes to convince the judge that he had probable cause for the warrant.

8) After the patrolmen obtained the search warrant, they began to search my car. All the things in the car, computers, art work, cameras, money, guns (in a locked box), clothes I had intended to give my family, including the car. After the search, I was placed under arrest.

Declaration of A. T. Wenfeldt - 2

9) During my intake, the county officers realized that I was not in my right state of mind and, in fact, was suicidal. I was put in the medical unit for observation. I remained in this unit for ten days until I was finally stabilized. Once I was stabilized on proper medication, a video court read me the charges and assigned me to a public defender. Then I was transferred to the general population. Because of the charges against me, I was put into a medium-maximum security unit. My charges included three trafficking offenses, but no gun charges.

10) At this time, my attorney, Orin Johnson, told me that he felt that we had a pretty good defense of an illegal search since I was free to go when the patrolman began to question me again. My attorney believed this to be true because I was being held without probable cause until the dog had scented the drugs.

11) After about thirty days in the county jail, my attorney notified me that the State of Nevada had dropped all charges against me. Instead, the State had decided to transfer me to federal custody with a notation handwritten across the transfer "Drugs and guns". My attorney advised me that the federal prosecutors were only going to charge me with one count of meth with intention to distribute. He also told me that he would make himself available for consultation with my new federal public defender regarding the illegal search and lack of probable cause.

12) At my first meeting with my federal public defender, Vito de la Cruz, he told me that he wanted me to plea not guilty. He also said there were two highway patrolmen and he knew who they were. He told me not to worry; I was in good hands. Unfortunately, he later resigned and moved to Seattle.

Declaration of A. T. Wenfeldt - 3

13) My case was then initially assigned to the lead attorney in the Public Defender's Office, Michael Kennedy. However, due to his caseload, he passed me on to Cyhthia Hahn, an assistant public defender. It took a while for Ms. Hahn to actually contact me.

14) My first encounter with Ms. Hahn was the polar opposite to my prior meeting with Mr. de la Cruz. After perfunctory introductions, Ms. Hahn told me: "You're going to get ten years." When she said that to me, she had not yet received any discovery, let alone reviewed it. I specifically instructed her to obtain and review the video and the transcripts regarding the search warrant. I explained to her that the purpose of this instruction was to determine whether, in fact, the patrolman's continued questioning of me after he had released me was legal. I also requested that she seek supervised release for me pending trial.

15) Ms. Hahn responded quickly and without apparent reflection to my instructions and requests. Ms Hahn said that the Fourth Amendment no longer was applicable and that the stop was legal. She did not distinguish between the first and second stop. She also said without explaining why that I could be released while trial was pending. Later Ms Hahn did arrange for an interview with the pre-trial officer, but she did not take a little time to prepare me for the issues that would be raised during the interview. I was very anxious and ill prepared. The interview ended with the interviewer telling me that I was going to get what I deserved.

Declaration of A. T. Wenfeldt - 4

16) At our next meeting, Ms Hahn came armed with several documents. The first was the draft Plea Agreement. The Plea Agreement stipulated a sentence of ten years. She presented this to me not with any factual or legal justification. Rather, she used the fear tactic of the prosecutor's threat to seek more charges in the form of gun enhancements of five years for each of my three guns. As with the $2,800.00 in cash that the Government had tried and failed to confiscate, the Government lacked any evidence that they were linked to my crime. I rejected this draft Plea Agreement.

17) At this meeting I also asked Ms Hahn to show me what evidence the Government had to support its draft Plea Agreement. Ms Hahn produced a laboratory report that had a discrepancy in the weight, which I pointed out to her. The report had a handwritten notation in ink and 36 grams had been added to the total. I instructed Ms Hahn to have the evidence rechecked, rewashed and reweighed to isolate the actual drug. Ms Hahn became very defensive at this instruction. She said that washing and cleaning the evidence would not change the weight. She said she knew this because she had a Ph.D. in chemistry. Nevertheless, Ms Hahn said she would look into the weight discrepancy.

18) When next we met, Ms Hahn informed me that she questioned the prosecuting attorney about the weight discrepancy. The prosecuting attorney had said to Ms Hahn that the bags which contained the evidence had caused the discrepancy. Ms Hahn had also not followed my instructions to have the evidence cleaned, rewashed and reweighed. This time she refused absolutely to do so, declaring that she did not want "to look like an idiot".

19) When I asked Ms Hahn about the application of the "Safety Valve" to my case, she said I cannot have any points in order to be eligible. The only charges against me that I could think of were: 1) a negligent driving charge almost ten years old and 2) a DUI in 2007. Ms Hahn thought she could get the negligent driving dropped because it was so old. That way I would be eligible for the Safety Valve. Finally, Ms Hahn said that she would have a psychologist examine me to show that I was not in my right state of mind at the time of the crime.

20) After the passage of some time, Ms Hahn met with me and informed me that she had met with the assistant prosecutor. She said that she had convinced him to agree that the Safety Valve would apply to my case.

21) When, at the same meeting, I asked Ms Hahn about my interview with a psychologist, she denied she had ever said anything about a psychologist. I also again asked about cleaning, rewashing and reweighing the evidence. Again, she refused to do so.

22) In addition, Ms Hahn told me that with the Safety Valve available, I should be looking at five years instead of ten. She did warn me that the final decision about my sentence remains. She also said that the prosecutor was going to keep a two-point enhancement for guns and was willing to allow me a two-point reduction for signing the Plea Agreement.

23) Finally, I questioned the Plea Agreement arguing that the prosecutor would have a tough time trying to convict me for drug dealing. After discussing the matter vigorously, I reluctantly signed the Plea Agreement because of

the Safety Valve.

24) During the months following my signing of the Plea Agreement, the pre-trial services came to interview me. I explained all of the circumstances from which my drug addiction arose, including my drug use, profession, history of abuse and suicidal tendencies. I also had friends and family write letters to the judge regarding my life and character. I had my medical records sent to my attorney, which demonstrated beyond quibble my unstable state of mind, which had preceded my drug addiction.

25) The letters from my family and friends were submitted to the court. However, Ms Hahn never discussed my medical records with me nor did she ever use them for mitigation purposes.

26) In the days preceding the sentencing hearing I was pleading with Ms Hahn to explore other sentencing options such as long-term drug treatment or split-sentencings. Most of the time she would not answer or return my telephone calls. Since I could never reach Ms Hahn, I asked my sister to call her as well. When Ms Hahn finally answered one of my calls, she bemoaned my repeated calls and bewailed my sister's calls as well. I told her she just had to answer one or two of my calls. We never did discuss my case. In fact, both my sister and I felt that Ms Hahn had lost all interest in my case ever since I had signed the Plea Agreement. Ms Hahn simply did not care.

27) Ms Hahn confirmed our suspicion in an unforeseen and unforgivable manner in the court room before my sentencing hearing had convened. Ms Hahn came into the courtroom absolutely livid, telling me that she was "fed up" with calls from my sister and me. She also said that I had lied to her.

Declaration of A. T. Wenfeldt - 7

I asked her to lower her voice and to explain to me what she was talking about. Ms Hahn said that another misdemeanor had been discovered when my presentence investigation report ("PSI") had been done.

28) I had never seen the PSI before my sentencing and had precious little time and no ability to concentrate because of my lawyer's yelling. I could not think or respond.

29) When the judge asked me if I had been coerced into signing the Plea Agreement, I wanted to say, "Yes!", but after Ms Hahn's loud tongue lashing, I was confused and completely spent. I said, "No" to the judge. I did ask about split-sentencing, but he said it was impossible with charges requiring mandatory sentencing. So, without the protection of the Safety Valve, the Court reluctantly sentenced me to the mandatory minimum sentence of ten years.

30) The judge said that he had received and read that my family, friends and I had written, however, he could not use them to mitigate my sentence because of its mandatory nature.

31) Tellingly, the judge ruled against the Government regarding its motion for forfeiture of the $2,290.00 found on my person during my arrest.

Under penalty of perjury and pursuant to 28 USC § 1496, I declare that the statements in my Declaration are true and correct.

Albert Thomas Wendfeldt
Petitioner-Defendant

Sheridan, Oregon
Dated this ___15th___ day of April 2013

_____
Albert Thomas Wendfeldt

Albert Thomas Wendfeldt 46188-046
Sheridan Prison Camp - Unit 5
P.O. Box 6000
Sheridan, Oregon 97378

AO 243    (Rev. 2/95)

# MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

(If movant has a sentence to be served in the future under a federal judgment which he or she wishes to attack, the movant should file a motion in the federal court which entered the judgment.)

## MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

*Explanation and Instructions–Read Carefully*

(1) This motion must be legibly handwritten or typewritten, and signed by the movant under penalty of perjury. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury. All questions must be answered concisely in the proper space on the form.

(2) Additional pages are not permitted except with respect to the facts which you rely upon to support your grounds for relief. No citation of authorities need be furnished. If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum.

(3) Upon receipt, your motion will be filed if it is in proper order. No fee is required with this motion.

(4) If you do not have the necessary funds for transcripts, counsel, appeal, and other costs connected with a motion of this type, you may request permission to proceed *in forma pauperis*, in which event you must execute form AO 240 or any other form required by the court, setting forth information establishing your inability to pay the costs. If you wish to proceed *in forma pauperis*, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution.

(5) Only judgments entered by one court may be challenged in a single motion. If you seek to challenge judgments entered by different judges or divisions either in the same district or in different districts, you must file separate motions as to each such judgment.

(6) Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for relief in the motion you file seeking relief from any judgment of conviction.

(7) When the motion is fully completed, the original and at least two copies must be mailed to the Clerk of the United States District Court whose address is

(8) Motions which do not conform to these instructions will be returned with a notation as to the deficiency.

Please refer to my attached Declaration.

AO 243 (Rev. 2/95)

**MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

| United States District Court | District | Nevada | |
|---|---|---|---|
| Name of Movant: Albert Thomas Wendfeldt | Prisoner No. 46183-048 | | Case No. 311-CR-00094-LRH-VPC |
| Place of Confinement: Sheridan Prison Camp - Unit 5, P.O. Box 6000, Sheridan, Oregon 97378 | | | |
| UNITED STATES OF AMERICA  V.  ALBERT THOMAS WENDFELDT (name under which convicted) | | | |

## MOTION

1. Name and location of court which entered the judgment of conviction under attack

   United States District Court, District of Nevada at Reno

2. Date of judgment of conviction    May 07, 2012

3. Length of sentence    120 months

4. Nature of offense involved (all counts)    1 Count Possession with Intent to Deliver Methanphetamine 21 USC § 841(a)1 and (b)(1)(A)(viii)

5. What was your plea? (Check one)
   (a) Not guilty ☐
   (b) Guilty ☒
   (c) Nolo contendere ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☐
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐    No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☐    No ☒

(2)

AO 243    (Rev. 2/95)

9. If you did appeal, answer the following:    N/A

   (a) Name of court

   (b) Result

   (c) Date of result

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any federal court?
Yes ☐   No ☒

11. If your answer to 10 was "yes," give the following information:    N/A

   (a) (1) Name of court

      (2) Nature of proceeding

      (3) Grounds raised

      (4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐   No ☐

      (5) Result

      (6) Date of result

   (b) As to any second petition, application or motion give the same information:

      (1) Name of court

      (2) Name of proceeding

      (3) Grounds raised

AO 243    (Rev. 2/95)

    (4) Did you receive an evidentiary hearing on your petition, application or motion?
        Yes ☐   No ☐

    (5) Result

    (6) Date of result

(c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
    (1) First petition, etc.    Yes ☐   No ☐
    (2) Second petition, etc.  Yes ☐   No ☐

(d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

    For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.
    Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of these grounds.
(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.
((b)) Conviction obtained by use of coerced confession.

(4)

AO 243    (Rev. 2/95)

    (c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
    (d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
    (e) Conviction obtained by a violation of the privilege against self-incrimination.
    (f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
    (g) Conviction obtained by a violation of the protection against double jeopardy.
    (h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
    (i) Denial of effective assistance of counsel.
    (j) Denial of right of appeal.

A. Ground one:

Confession obtained by coercive means.

    Supporting FACTS (state *briefly* without citing cases or law):

The prosecutors stated to my attorney, Ms Hahn, that if I did not sign the plea agreement, they would also charge me with gun offenses, adding fifteen years for the three guns.
    Declaration of W. T. Wendfeldt, ¶16.

B. Ground two:

Conviction obtained by use of evidence gained pursuant to an unlawful search and seizure.

    Supporting FACTS (state *briefly* without citing cases or law):

Please refer to my Declaration, ¶¶ 5, 6, 17.

C. Ground three:

Denial of effective counsel.

    Supporting FACTS (state *briefly* without citing cases or law):

Please refer to my Declaration, ¶¶ 14-29.

(5)

AO 243   (Rev. 2/95)

   D.  Ground four:

      Supporting FACTS (state *briefly* without citing cases or law):

13.  If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them:

14.  Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes [ ]   No [X]

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing   Vito de la Cruz   Law Office of Federal Defender
201 W. Liberty, Suite 102
Reno, Nevada 89501-2027

(b) At arraignment and plea   Cynthia Hahn   [For both attorneys]

(c) At trial   N/A

(d) At sentencing   Cynthia Hahn

AO 243  (Rev. 2/95)

   (e) On appeal    N/A

   (f) In any post-conviction proceeding    Forfeiture                Cynthia Hahn

   (g) On appeal from any adverse ruling in a post-conviction proceeding    N/A

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
    Yes [ ]    No [X]

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
    Yes [ ]    No [X]

   (a) If so, give name and location of court which imposed sentence to be served in the future:

   (b) Give date and length of the above sentence:

   (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
       Yes [ ]    No [ ]

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

4/15/13
‾‾‾‾‾
Date

_____
Signature of Movant

(7)

AO 243    (Rev. 2/95)

(e)  On appeal

(f)  In any post-conviction proceeding

(g)  On appeal from any adverse ruling in a post-conviction proceeding

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☐   No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐   No ☐

(a) If so, give name and location of court which imposed sentence to be served in the future:

(b) Give date and length of the above sentence:

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐   No ☐

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

4/15/13
Date

_____
Signature of Movant

(7)